IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JTH TAX LLC d/b/a
LIBERTY TAX SERVICE *et al*,     *

    Plaintiffs,     *

                                        Civil Action No. RDB-21-3000

    v.     *

MICHAEL IRVING *et al*,     *

    Defendants.

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs JTH Tax LLC d/b/a Liberty Tax Service ("Liberty Tax") and Siempretax+ LLC ("Siempre") are franchisors of income tax preparation centers. (ECF No. 1.) In facilitating the development of franchises, the Plaintiffs extend certain loans by promissory notes to potential franchisees and investors. *Id.* Defendant Michael Irving operated some eleven Liberty Tax franchises in Maryland until late 2017 when he opened Blue Mountain Financial Inc d/b/a Blue Mountain Financial or Sis Tax ("Blue Mountain"). Plaintiffs bring this case against Irving and Blue Mountain for alleged violations of non-compete clauses and to collect payment on a series of promissory notes. *Id.*

The parties have filed Cross-Motions for Partial Summary Judgment with respect to Count Four of the Complaint. (ECF Nos. 23, 24.) Count Four consists of claims against Defendant Michael Irving as a guarantor of seven promissory notes. (ECF No. 1 at 20.)[1] The Defendants contend that these claims are barred by Maryland's three-year statute of

---

[1] The Complaint lodges this claim solely against Defendant Irving, but Defendants' Motion for Partial Summary Judgment is filed on behalf of both Defendants. (ECF No. 23.)

limitations. (ECF No. 23.) For the reasons that follow, Defendants' Motion shall be GRANTED. The statute of limitations is procedural, and Maryland law mandates that there is a three-year period of limitations for contractual claims. Plaintiffs argue that these promissory notes were under seal and a twelve-year statute of limitations apply. (ECF No. 24.) Secondarily, the Plaintiffs argue that these are negotiable instruments with a six-year statute of limitations. *Id.* Neither of these claims are with merit. Accordingly, the promissory notes are treated as contracts with a three-year recovery period, which has since passed, thereby precluding Plaintiffs' claim in Count Four. Accordingly, Plaintiffs' corresponding Cross-Motion for Partial Summary Judgment (ECF No. 24) is DENIED.

## BACKGROUND

The following undisputed facts relate to Plaintiffs' claim against Defendant Irving for Breach of Promissory Notes as alleged in Count Four of the Complaint. (ECF No. 1 at 20.) As franchisors of income tax preparation service centers in the United States, Plaintiffs often provide loans to prospective franchisee owners to aid in the opening and running of tax preparation franchises. (ECF No. 24 at 2.) Beginning in 2011, Defendant Irving entered into franchise agreements with Plaintiffs and eventually operated eleven franchise territories in Maryland. *Id.* To purchase and operate certain of those franchises, Irving executed a series of promissory notes held by Plaintiffs. (ECF No. 23-1 at 2.) Irving ceased operations of his franchises in December 2017, and formed Blue Mountain Financial on December 18, 2017. (ECF No. 23-1 at 3.)

At issue in Count Four, Defendant has failed to pay the amounts set forth in seven promissory notes that were executed in connection with his franchises. (ECF No. 24 at 2.) The date of execution, date for repayment, and amount owed are as follows:

| Note | Date Executed | Date Due | Principal Amount |
|---|---|---|---|
| **1** (ECF No. 1-14)[2] | April 28, 2015 | Payment plan; five payments of $162,458.40 plus interest due on February 28 for the years 2016, 2017, 2018, 2019, 2020 | $812,292.00 |
| **2** (ECF No. 1-15)[3] | December 27, 2016 | February 27, 2017 | $285,730.00 |
| **3** (ECF No. 1-16)[4] | March 2, 2017 | March 2, 2017 | $51,026.00 |
| **4** (ECF No. 1-17)[5] | March 16, 2017 | March 16, 2017 | $25,385.00 |
| **5** (ECF No. 1-18)[6] | March 30, 2017 | March 30, 2017 | $36,073.00 |
| **6** (ECF No. 1-19)[7] | April 12, 2017 | April 12, 2017 | $18,665.00[8] |
| **7** (ECF No. 1-20)[9] | August 25, 2017 | February 27, 2018 | $195,541.00 |

Irving's final payment on Note 1 was made on April 26, 2017, and the entire principal amount plus interest remains outstanding.[10] (ECF No. 24 at 4.) Irving's final payment on Note 2 was made on November 30, 2017, and the entire principal amount plus interest remains outstanding.[11] *Id.* Irving's final payment on Note 3 was made on August 31, 2017, and the

---

[2] Cited by parties as "Exhibit M."
[3] Cited by parties as "Exhibit N."
[4] Cited by parties as "Exhibit O."
[5] Cited by parties as "Exhibit P."
[6] Cited by parties as "Exhibit Q."
[7] Cited by parties as "Exhibit R."
[8] In their Cross-Motion for Partial Summary Judgment, Plaintiffs apparently misstate the principal amount owed on Note 6 as provided in ECF No. 1, Exhibit 19 ("Exhibit R"). Plaintiffs state the principal amount is $17,667.89, whereas the provided Note states the principal amount is $18,665.00. (ECF No. 24 at 5.) Defendants represent that the amount owed was $18,665.00. The Court looks to the exhibit for clarification, though it notes that the exact amount has no bearing on the legal analysis.
[9] Cited by parties as "Exhibit S."
[10] Plaintiffs clarify that Irving "never paid any principal amounts due to outstanding interest owed." (ECF No. 24 at 4.)
[11] Plaintiffs clarify that Irving "never paid any principal amounts due to outstanding interest owed." (ECF No. 24 at 4.)

entire principal amount plus interest remains outstanding.[12] *Id.* Irving's final payment on Note 4 was made on August 31, 2017, and the entire principal amount plus interest remains outstanding.[13] *Id.* at 5. Irving's final payment on Note 5 was made on August 31, 2017, and the entire principal amount plus interest remains outstanding.[14] *Id.* Irving did not make a payment on Note 6, and the entire principal amount plus interest remains outstanding. (ECF No. 24 at 6.) Irving did not make a payment on Note 7, and the entire principal amount plus interest remains outstanding. *Id.*

All seven promissory notes include similar language; Notes 2 through 7 contain identical language in their entirety, save for the principal amount owed and the due date. (ECF No. 1, Exs. 14-20.) The promissory notes all include the same language concerning the interest rate: "interest at the rate of twelve percent (12%) per annum on the unpaid balance computed from the date funds are initially disbursed." *Id.* After stating the amount due, each note references "Liberty's Automatic Payment Transfer program", which is a payment scheme that seemingly applies certain money that Irving's franchises receive toward the amount due on the note(s). *Id.* That provision explains that Liberty will automatically deduct money and apply that money first toward interest and then toward the principal amount owed. *Id.*

The notes also include language explaining the purpose for payment (franchise business), that the maker of the note is to submit monthly financial information to Liberty, that the person liable on the note waives certain tax exemptions and agrees that Liberty may

---

[12] Plaintiffs clarify that Irving "never paid any principal amounts due to outstanding interest owed." (ECF No. 24 at 4.)
[13] Plaintiffs clarify that Irving "never paid any principal amounts due to outstanding interest owed." (ECF No. 24 at 4.)
[14] Plaintiffs clarify that Irving "never paid any principal amounts due to outstanding interest owed." (ECF No. 24 at 5.)

take certain delineated actions concerning payment or liability under the note, and explains the terms surrounding default. *Id.*

Notes 2-7 include transferability language, stating:

> This Note may be assigned, transferred or negotiated by the noteholder to any person at any time without notice to or the consent of the Maker. The Maker may not assign or transfer this Note or any of its rights hereunder without the prior written consent of the noteholder. This Note shall inure to the benefit of and be binding upon the parties hereto and their permitted assigns.

(ECF No. 1 Exs. 15-20.) Note 1 similarly alludes to transferability and states that the terms and conditions of the note "shall be binding upon the heirs, personal representative, successors and assigns of each Obligor and shall inure to the benefit of Liberty, Liberty's successors and assigns." (ECF No. 1, Ex. 14.) All seven notes state that the note in its entirety "constitutes the entire understanding of the parties and supersedes all prior negotiations, commitments, representations, and undertakings of the parties with respect to the subject matter hereof." (ECF No. 1, Exs. 14-20.) Finally, all notes include a provision which states that the contents therein shall be construed and enforced according to Virginia state law. *Id.* Each of the notes was signed by Mike Irving under the Maker for Mirving Tax Services LLC after the clause "WITNESS the following signature(s) and seal(s)." *Id.*

Plaintiffs filed suit in this Court on November 22, 2021, bringing eight counts against Defendants Irving and Blue Mountain for damages sustained based on the Defendants alleged violations of franchise agreements and Irving's failure to pay the amount owed on the above-mentioned promissory notes. (ECF No. 1.) Defendants filed a Motion for Partial Summary Judgment (ECF No. 23) on Count Four which concerns Plaintiffs' allegation that Irving failed remit payment on the promissory notes. Defendants argue that the notes are neither under

seal nor negotiable instruments under Virginia law, and are therefore considered standard contracts that are subject to Maryland's three-year statute of limitations. (ECF No. 23.) Plaintiffs argue that the promissory notes are considered negotiable instruments under both Virginia and Maryland Law, and are therefore subject to a six-year statute of limitations. (ECF No. 24.) Plaintiffs alternatively argue that the notes were all under seal and are subject to the even longer twelve-year statute of limitations. *Id.*

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718

F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they '"may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir.

1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## ANALYSIS

As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In this case, the parties agree that Maryland statute of limitations laws apply. However, Maryland law also recognizes choice of law provisions in determining the meaning of contracts. *Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015) ("If the contract contains a choice of law provision, we apply generally the law of the specified jurisdiction."). Here, the promissory notes at issue contain Virginia choice of law provisions. Accordingly, this Court shall employ Virginia law in interpreting its contents and shall apply the corresponding Maryland statute of limitations. [15] *See Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 2d 739, 756 (D. Md. 2001) ("The Maryland courts have followed the general rule that the statute of limitations of the forum state applies even when that state's choice of law rules require that another state's substantive law be applied."). In determining which statute of limitations applies, the Court must first determine under Virginia law whether the promissory notes are: (1) under seal, (2) negotiable instruments, or (3) standard contracts; each classification carries a different statute of limitations.

---

[15] Plaintiffs do not contest application of Virginia law, but instead state that applying Maryland or Virginia law would result in the same outcome. (ECF No. 24 at 7.) Both Maryland and Virginia have adopted the Uniform Commercial Code (UCC) and their laws are accordingly similar. Therefore, as Plaintiffs state, application of Virginia law as compared to Maryland law would not yield differing results.

## I. Contracts Under Seal

Maryland law dictates that contracts signed under seal are protected by a twelve-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-102(a)(5). Under Virginia law, a contract is under seal if (1) a seal is affixed, (2) a person includes his signature where the contract includes "words importing a sealed instrument, or recognizes a seal" without an attached seal, or (3) a signature by a person "before an officer authorized to take acknowledgments of deeds to be recorded" in Virginia. Va. Code Ann. § 11-3. The Supreme Court of Virginia has recently explained the statute, stating that it:

> relaxes the seal requirement by offering a limited list of specific substitutes for a seal. These substitutes include (1) 'a scroll by way of a seal'; (2) an imprint or stamp 'of a corporate or an official seal on paper or parchment'; (3) the use in the 'body of [such] writing' of the words 'this deed,' or 'this indenture,' or other words importing a sealed instrument or recognizing a seal; or, finally, (4) a proper acknowledgement of a document clearly demonstrating an intent to convey real estate 'before an officer authorized to take acknowledgments of deeds.'

*Game Place, L.L.C. v. Fredericksburg 35, LLC*, 295 Va. 396, 407, 813 S.E.2d 312, 317 (2018) (quoting Va. Code Ann. § 11-3).

Although Defendant Irving's signature follows the words "signature(s) and seal(s)" there is no indication that such notation was intended, either by the parties or by statute, to constitute a "seal" sufficient for a sealed document. To their detriment, Plaintiffs have not cited to any Virginia (or Maryland) laws interpreting whether a contract was made under seal. Instead, Plaintiffs rely on their argument that the promissory notes constitute negotiable instruments, thereby making an argument that the notes are under seal "academic." (ECF No. 24 at 8.) Nonetheless, Plaintiffs summarily assert that the document should simply be treated as under seal. *Id.* at 9. However, the "signature(s) and seal(s)" clause, without more, does not

9

comport with the statute such that any signature thereafter is considered under seal. Instead, that clause appears to be an opportunity for a seal to be affixed – whether by an actual seal or a statutorily delineated alternative. That opportunity was not seized, and the contract is not considered to be under seal. Consequently, the twelve-year statute of limitations does not apply.

## II. Negotiable Instruments

Plaintiffs primarily argue that the promissory notes are considered negotiable instruments. Under Maryland law, negotiable instruments are subject to a six-year statute of limitations. Md. Code Ann., Com. Law § 3-118. In determining whether a promissory note is considered a negotiable instrument, Virginia has adopted the Uniform Commercial Code ("UCC"). A negotiable instrument is:

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Va. Code Ann. § 8.3A-104. A promise is unconditional "unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing. A reference to another writing does not of itself make the promise or order conditional." § 8.3A-

106(a). A promise is not made conditional "(i) by a reference to another writing for a statement of rights with respect to collateral, prepayment, or acceleration, or (ii) because payment is limited to resort to a particular fund or source." § 8.3A-106(b). The comments to the statute emphasize that "the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment." § 8.3A-106 cmt. 1.

In interpreting the relevant UCC provisions, the United States Court of Appeals for the Eleventh Circuit has stated that the "distinction between when a note's reference to another writing does or does not defeat negotiability, therefore, rests on two factors: the completeness and clarity of the note itself in setting forth the parties' obligations and the clarity and completeness of the reference." *DZ Bank AG Deutche Zentral-Genossenschaftsbank v. McCranie*, 720 F. App'x 576, 584 (11th Cir. 2018). The Eleventh Circuit makes it clear that "regardless of whether the separate writing actually amends the material terms of the parties' agreement… [i]t is the need to consult the other writing that makes the note incomplete on its face and defeats negotiability." *Id.*

Relying on § 8.3A-106, Defendants dispute that the promissory notes are unconditional and argue that the notes rely on another agreement or document for the payment structure. More specifically, Defendants argue that "[o]ne would not even know the amount of principal or interest that is due or has been paid without investigating and examining the intricate accounting details of the Automatic Transfer Program with respect to the Mirving Tax franchises to determine how much of the principal is outstanding" thereby rendering the notes non-negotiable. (ECF No. 25 at 8.) In all seven notes, after identifying the amount due, interest rate, and payable date, the "Automatic Payment Transfer" provision at issue states:

11

> However, pursuant to Liberty's Automatic Payment Transfer program, all of the tax preparation, transmitter, software, and electronic filing fees, any rebates that the Maker receives from bank products or customers who purchase bank products and all other revenue due to the Maker, shall initially be paid to Liberty. From these fees, rebates and revenue, Liberty will deduct monies that the Maker owes to Liberty and, if applicable, SiempreTax LLC ("SiempreTax") and deduct and hold monies to apply to upcoming amounts due to Liberty and/or SiempreTax, and remit any balance to the Maker. All such payments shall be applied first to past-due interest outstanding and then to principal. Interest under this Note will be calculated on the basis of a 360-day year consisting of Twelve (12) 30-day months.

(ECF No. 1, Exs. 14-20.) Defendants argue that this provision would make the holder unaware of "what payments were due or when." (ECF No. 25 at 4.) In other words, Defendants posit that a holder "would not even know the amount of principal or interest that is due or has been paid without investigating and examining the intricate accounting details of the Automatic Transfer Program…to determine how much of the principal is outstanding." (ECF No. 25 at 8.) Conversely, Plaintiffs assert that this provision merely governs the payment method which "is no different than specifying another payment method" that is expressly considered under § 8.3A-106(b)(ii) (a promise is not conditional "because payment is limited to resort to a particular fund or source"). (ECF No. 26 at 4.)

Although the promissory notes at issue include a promise to pay a certain amount at a definite time, it is unclear whether the "Automatic Payment Transfer program" is a condition to payment. On its face, the provision could potentially apply to prepayment under § 8.3A-106(b)(i) or payment from a particular fund under § 8.3A-106(b)(ii); however, it is uncertain what the provision applies to, and that level of uncertainty renders the promissory notes non-negotiable. If the Court is unable to discern from the four corners of the document whether it constitutes the entirety of the agreement, negotiability is destroyed.

Furthermore, the Liberty Automatic Payment Transfer provision makes it unlikely that any other two parties could be bound by the notes. Despite the provision(s) acknowledging potential transferability, the payment scheme dictated by this "Payment Transfer" render reassignment of payment more complicated than simple transfer of the note. A receiving party, "holder" of the note, would need to be privy and have access to Irving's businesses' accounts and fees payable. This complication alone favors non-negotiability. Finally, as Defendants appropriately state, once the amount of fees are deducted from the interest and principal amount due on the notes, the outstanding amount due is not obvious on the face of the note. Due to the lack of clarity resulting from this provision, the promissory notes cannot be considered negotiable instruments, and the six-year statute of limitations shall not apply to Plaintiffs' claim.

### III.     Standard Contracts

Maryland law has a three-year statute of limitations to bring suit for standard contracts. Md. Code Ann., Cts. & Jud. Proc. § 5-101. More specifically, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." *Id.* Because the Court has determined that the notes are not under seal and are not negotiable instruments, no other provision of the Maryland Code applies. Consequently, Plaintiffs' claims concern standard contracts which are subject to a three-year statute of limitations. Here, the three years began once Defendant Irving breached the conditions of the promissory notes; the time started once he failed to remit payment on the dates they were due.

13

Importantly, specific to the payment plan set forth in Note 1, Virginia law dictates that when a party fails to pay under an installment contract, there is only one breach and "each successive failure to make an installment payment…[is] merely a continuation of the breach….." *Harvey v. Merrill Lynch Life Ins. Co.*, No. 3:11-CV-00073, 2012 WL 1155711, at *7 (W.D. Va. Apr. 5, 2012) (applying Virginia law).

There is a dispute of fact as to when the breach occurred for Note 1, but the dispute is immaterial. Plaintiff states that Defendant's last payment on Note 1 was on April 26, 2017. (ECF No. 24 at 4.) Plaintiff does not specify how much money was paid, so it is unclear whether the breach would have been committed prior to that date, or whether it would be considered at the date of next payment: February 28, 2018. Defendant argues that his failure to pay any installments after ceasing operations in December 2017 is enough to constitute the breach date. Even at the latest date of February 28, 2018, suit would have needed to be filed within three years - by February 28, 2021. Here, suit was filed on November 22, 2021, almost nine months beyond the statute of limitations. Similarly, the statute of limitations has run for the remaining notes, as set forth below.

| Note | Date of Breach (Payment Due Date) | Statute of Limitations |
|---|---|---|
| 2 | February 27, 2017 | February 27, 2020 |
| 3 | March 2, 2017 | March 2, 2020 |
| 4 | March 16, 2017 | March 16, 2020 |
| 5 | March 30, 2017 | March 30, 2020 |
| 6 | April 12, 2017 | April 12, 2020 |
| 7 | February 27, 2018 | February 27, 2021 |

As explained, Plaintiffs filed suit on November 22, 2021, almost twenty-one (21) months beyond when they could recover on Note 2, and about nine months late for recovery on Note

7. (ECF No. 1.) Accordingly, the statute of limitations has run on their claim alleged in Count Four, and they are barred from recovery under that claim.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Partial Summary Judgment (ECF No. 23) on Plaintiffs' Count Four is GRANTED, and Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF No. 24) is DENIED. Judgment as to Plaintiffs' Count Four (ECF No. 1) is ENTERED in favor of DEFENDANT IRVING.

A separate Order follows.


Dated: February 1, 2023                      _____/s/_____
                                             Richard D. Bennett
                                             United States District Judge